J-A07006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.A.K., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.M., | |
| Appellant | No. 1328 WDA 2015 |

Appeal from the Order entered August 7, 2015,
in the Court of Common Pleas of Blair County,
Orphans' Court, at No(s): 2010 GN 1513

BEFORE:  BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                          **FILED MAY 16, 2016**

C.M. ("Father") appeals from the August 7, 2015 child custody order, which granted the petition filed by A.A.K. ("Mother") for modification of the existing custody order concerning their then five-year-old daughter, R.M. We affirm.

We summarize the relevant factual and procedural history as follows. R.M. was born in November of 2009.  During the first six months of her life, R.M. resided with Mother and Father in Mother's Blair County home.  N.T., 8/6/15, at 17, 25.  Mother initiated the underlying custody matter *pro se* in April of 2010; however, Father continued to reside with Mother "off and on" until early 2011.  *Id*.  Father moved to Berwick, in Columbia County, in October of 2011, which is a driving distance of two and one-half hours from Mother's home.  *Id*. at 19, 74.

Father resides with L.M. ("Stepmother"), whom he married on June 25, 2014, her son, A., who was three years old at the time of the subject proceedings, and their infant daughter, K.M., who was approximately six months old. *Id*. at 74-75, 109. Mother resides with her son, J.W., who was ten years old at the time of the subject proceedings, and who is not Father's child. *Id*. at 2. R.M. has a close bond with J.W. The siblings attend the same school and enjoy riding the school bus together.

By consent order dated August 17, 2011, the trial court granted the parties shared legal and physical custody on a rotating schedule, wherein Father received sixteen consecutive days and Mother seven consecutive days. In July of 2012, Mother filed a *pro se* petition for modification wherein she requested increased physical custody with R.M. By order dated March 6, 2013, the trial court granted Mother custody every other weekend from Friday until Tuesday, and on the alternating weeks, from Sunday until Tuesday*.* In addition, upon agreement, the order directed a status conference in three months to review the custody matter.

The status conference occurred on July 1, 2013, during which the parties requested an evidentiary hearing "to determine in whose home and at which school their daughter will attend." Order, 7/1/13, at 1. Following another status conference, the court granted the parties shared physical custody on an alternating weekly basis. Further, the order directed that a

hearing be scheduled for May of 2015, prior to R.M.'s enrollment in kindergarten in the 2015-2016 school year.

The subject proceedings occurred on August 6, 2015. The court received testimony from Mother, Father, and Stepmother. By order dated August 7, 2015, the trial court granted the parties shared legal custody, Mother "residential custody,"[1] and Father partial physical custody on alternating weekends during the school year. The court authorized Mother to enroll R.M. for kindergarten where she resides in the Bellwood-Antis School District. During the summer months, the court granted Mother and Father shared physical custody in alternating seven-day periods. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on September 29, 2015.

Father raises one issue for our review:

> Whether or not the [t]rial [c]ourt abused its discretion in awarding Mother primary [physical] custody in this matter as Father has had either primary custody or 50/50 custody for the last number of years and there was no evidence to conclude that the best interest of the child would be best served by having primary [physical] custody with Mother during the school year?

Father's brief at 4.

The scope and standard of review in custody matters is as follows.

---

[1] We observe that the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, does not use the term "residential custody." Herein, we refer to Mother's custody award during the school year as primary physical custody. **See** 23 Pa.C.S. § 5322(a) (defining "primary physical custody" as "[t]he right to assume physical custody of the child for the majority of time").

3

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa.Super. 2001)).  Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted).  The test is whether the evidence of record supports the trial court's conclusions.  *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa.Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.  Indeed, the knowledge

gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting **Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006), *citing **Arnold v. Arnold***, 847 A.2d 674, 677 (Pa.Super. 2004).

When awarding any form of custody, § 5328(a) of the Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

**§ 5328.  Factors to consider when awarding custody.**

   **(a)  Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

   (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

   (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Further,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-823. With these standards in mind, we turn to the merits of this appeal.[2]

_____

[2] We observe that the trial court did not delineate the reasons for its decision on the record in open court or in a written opinion or order prior to the deadline by which Father had to file a notice of appeal. We caution the court that this omission is in contravention of § 5323(d). Nevertheless, in this case, we discern no prejudice to Father, nor does he assert any prejudice. Therefore, we do not vacate the order.

Father argues that the evidence of record does not support the trial court's findings. Specifically, Father maintains that the court's credibility determinations were in error. We disagree.

In its Rule 1925(a) opinion, the trial court set forth its assessment of the § 5328(a) custody factors. The court made credibility determinations in favor of Mother and found § 5328(a)(1), (4), (5), (6), (9), (10), and (13) in Mother's favor. The court found § 5328(a), (3), (12), and (15) equal between the parties. Finally, the court found § 5328(a)(2), (7), and (8) irrelevant in this case.

After considering all of the § 5328(a) factors, the trial court concluded as follows:

> The [c]ourt finds both [p]arents are capable of providing adequate care to their daughter. The [p]arents had been sharing this responsibility but because the child now must begin Kindergarten and the [p]arties reside approximately 2–2½ hours away, their current equal co-parenting needed an adjustment.
>
> Based on Mother's stability, particularly residing in the same location for seven years and her preparation for her daughter's commencement of Kindergarten, the [c]ourt believes the child's best interests are served by primarily residing with Mother and going to school at the Bellwood[-]Antis School District.
>
> Further, Mother is more likely to foster a positive and continued relationship between the child and Father. The [c]ourt has concerns that Father would not be as cooperative with Mother if the child resided with him. These reasons include Father's previous conduct toward Mother in not informing her of a canceled pediatrician appointment as well as removing Mother from their daughter's emergency contact list.
>
> Because both [p]arents have been significantly involved in their daughter's life and now the [p]arties reside a significant distance

8

away, the [c]ourt is convinced residing with Mother represents the best chance for daughter to continue a significant relationship with both parents.

Trial Court Opinion, 9/29/15, at 12–13.

Father levels general challenges to the trial court's consideration of each of the enumerated factors. However, our review of the certified record confirms that the testimonial evidence supports the court's findings. To the extent that Father requests that we ignore our standard of review, reweigh the evidence, and make a determination in his favor, we must decline. **See M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa.Super. 2013) ("We must accept findings of the trial court that are supported by competent evidence of record. . . . Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record."). Having found that the certified record sustains the trial court's findings of fact, there is no basis to disturb it. Accordingly, all of Father's general assertions fail.

Nevertheless, we address Father's specific claims relating to the second, tenth, and thirteenth factors respectively. Father initially asserts that the court failed to weigh the second factor regarding, *inter alia*, whether a parent's past abuse presents a continued risk of harm to the child. Father contends that the court neglected to consider evidence that he twice filed protection from abuse ("PFA") petitions against Mother and complains that evidence of Mother's prior abusive conduct militates in favor of awarding him custody of R.M. No relief is due.

First, the certified record belies Father's assertion that the trial court ignored the evidence regarding the prior PFA orders against Mother. In its Rule 1925(a) opinion, the Court specifically noted, "Father had a previous [PFA] action against Mother." *Id*. at 8. Thus, Father's claim is factually inaccurate. Moreover, having acknowledged the past aggressions, the court tacitly determined that the PFA orders relating to Mother's abuse of Father did not evince a threat to R.M. In fact, the trial court concluded that "neither parent pose[d] any threat . . . [to] the child. *Id*. at 8. Indeed, we note that the court determined neither parent engaged in unsafe behavior and found them capable of adequate supervision even though Father was arrested for DUI with R.M. in his vehicle at 3:00 a.m.

With respect to § 5328(a)(10), which party is more likely to meet the daily needs of the child, including the physical, emotional, developmental, educational, and special needs, the trial court found, "Mother was significantly more informed as to the educational and medical needs of [R.M.] and more prepared to meet [R.M.]'s needs." Trial Court Opinion, 9/29/15 at 10. Father challenges this finding of fact. He stresses that, since obtaining decision-making authority over R.M.'s pediatric care in October 2014, Mother neglected to exercise it other than to arrange for immunizations that he was prepared to schedule for their daughter. Hence, Father posits that the court erred in finding Mother more attentive to R.M.'s educational and medical needs.

Pursuant to an October 20, 2014 order, Mother wields authority over R.M.'s pediatric care so long as she informs Father about appointments and permits him to attend. The order required Mother to continue to take R.M. to Geisinger Health System near Father's Berwick home to complete a series of immunizations. Thereafter, Mother was allowed to transfer the location of R.M's pediatric care to Blair County. Custody Order, 10/20/14, at 1.

During the custody trial, Mother explained that she requested this authority "[b]ecause when I entered [R.M.] into pre-school, I needed shot records and when I called her pediatrician where her dad was, she was very behind on her vaccinations. So, we had to get them up to speed so [R.M.] could go to pre-school." N.T., 8/6/15, at 18. Mother acknowledged that she took the "lead and initiative" to obtain all of R.M.'s necessary vaccinations, which required her to drive to R.M.'s pediatrician's office in Father's community a total of three or four times. *Id*. at 19-21. Mother testified that R.M. is currently a patient at Blair Medical Associates, located in her community. *Id*. at 23. As the certified record supports the trial court's decision to weigh this factor in Mother's favor, we will not disturb it.

With respect to § 5328(a)(13), the level of conflict between the parties and willingness to cooperate, the court found, in part,

> Father was not sincere in his statements that he would cooperate with Mother. This was demonstrated by Father not informing Mother that the child's doctor appointment was canceled and allowed Mother to drive a significant distance to that canceled appointment. Further[,] Father removed Mother's

11

name as an [e]mergency [c]ontact at [R.M.]'s pediatrician's office. This was done without Mother's consent or knowledge[.]

Trial Court Opinion, 9/29/15 at 10-11. Indeed, Mother testified with respect to the final vaccination scheduled for R.M. in the beginning of 2015, as follows:

> [W]e drove early the whole way over to the doctor's [office]. When we showed up, they said that they had called [Father] to cancel because they didn't have the vaccine at that time. When I asked why they didn't call me; my number was taken off of the emergency contacts. So, we drove all the way over there for no reason. . . .

N.T., 8/6/15, at 21. Mother observed that Father never answered her inquiry regarding why he did not let her know of the cancellation. *Id*. at 22-23. This evidence supports the trial court's conclusion that Father lacked a sincere desire to cooperate with Mother.

In addition, with respect to § 5328(a)(13), the court found, "Mother testified she would foster a positive relationship between Father and [R.M.]. Mother also drove the majority of the distance for the exchange of the child, to accommodate Father[']s not having a driver's license. . . ."[3] Trial Court Opinion, 9/29/15, at 11. Mother's testimony also supports this finding. *See* N.T., 8/6/15, at 19, 158.

Upon review of the testimonial and documentary evidence, we discern no abuse of discretion by the trial court in granting Mother primary physical custody of R.M. and Father partial physical custody during the school year.

---

[3] Upon inquiry by the trial court as to whether he has his "[driver's] license back," Father responded, "Yes, I do." N.T., 8/6/15, at 91.

We conclude that the court carefully and thoroughly considered R.M.'s best interests in light of the § 5328(a) custody factors. Father's arguments on appeal challenge the court's determinations regarding credibility and weight of the evidence. It is well-established that we defer to the trial court in this regard; therefore, Father's arguments are without merit. *See A.V.*, *supra* at 820; *see also Ketterer*, *supra*. Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2016